## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAYLA IVEY<br>66 Mundy Street<br>Wilkes-Barre, PA 18702 | : <br> : <br> : <br> : | CIVIL ACTION<br><br>CASE NO.: _____ |
| Plaintiff, | : <br> : | |
| v. | : <br> : | |
| WRIGHT OF PENNSYLVANIA, LLC<br>Wilkes Barre Township Commons<br>Suite 180<br>Wilkes-Barre, PA 18702<br>    and<br>W.D. WRIGHT CONTRACTING, LLC<br>1200 Sharon Road<br>Beaver, PA 15009 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | |

## CIVIL ACTION COMPLAINT

Plaintiff, Kayla Ivey (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      Plaintiff initiates the instant action to redress violations by Wright of Pennsylvania, LLC and W.D. Wright Contracting, LLC (hereinafter collectively referred to as "Defendants") of Title VII of the Civil Rights Act of 1964, ("Title VII" – 42 U.S.C. §§ 2000d *et. seq.*)/the Pregnancy Discrimination Act ("PDA"), the Pregnant Workers Fairness Act ("PWFA" - Pub. L. No. 117-328, 136 Stat. 4459 (2022)), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), the Fair Labor Standards Act ("FLSA" - 29 U.S.C. § 201 et. seq.), the

Pennsylvania Human Relations Act ("PHRA"), and applicable state law(s). [1] As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.    This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.    This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.    Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

5.    Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

---

[1] Plaintiff intends to amend her instant lawsuit to include claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

**PARTIES**

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant Wright of Pennsylvania, LLC, a subsidiary of Defendant W.D. Wright Contracting, LLC, upon information and belief, is a traffic control corporation focusing on Pennsylvania traffic needs, with a location at the above-captioned address.

9.      Defendant W.D. Wright Contracting, LLC, upon information and belief, is a traffic control corporation located at the above-captioned address.

10.      Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single, joint and/or integrated employer for purposes of the instant action.

11.      At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

12.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.      Plaintiff was employed by Defendants for approximately 1.5 years, from on or about January 27, 2023, until her unlawful termination (discussed further *infra*) on or about August 7, 2024.

3

14.     Plaintiff initially hired as a Flagger but was then promoted to a Crew Lead in just 6 months after starting her employment with Defendants, in or about May of 2023.

15.     At the time of Plaintiff's unlawful termination, she was primarily supervised by Office Manager, Alisha Foster (hereinafter "Foster") and Road Supervisor, Joe Brown (hereinafter "Brown").

16.     Throughout Plaintiff's employment with Defendants, Plaintiff was a hard-working full-time employee who performed her job well very well.

**-Pregnancy Discrimination and FMLA/PWFA Violations-**

17.     Plaintiff is an adult female.

18.     In or about September of 2023, Plaintiff informed then Office Manager, Scott (last name unknown, hereinafter "Scott") that she was pregnant.

19.     When Foster took over, in or about October of 2023, after Scott's termination, Foster knew immediately (likely from Scott) that Plaintiff was pregnant.

20.     Shortly after informing Defendants' management of her pregnancy, they began to treat Plaintiff in a demeaning, discriminatory, and disparate way.

21.     For example, on or about October 20, 2023, management took her work truck (a Dodge Ram pickup truck) away – despite that a work truck was provided to all Crew Leads.

22.     When Plaintiff asked why her work truck had been taken away, Scheduler, Idalys (last name unknown, hereinafter "Idalys") informed Plaintiff directly that her work truck had been taken away as it was a "hazard" **due to her pregnancy**, which made no legitimate sense as Plaintiff did not have any pregnancy-related restrictions or concerns.

23.     Moreover, Plaintiff was still permitted to be a road Flagger, which absolutely put Plaintiff more at risk of danger to her and her pregnancy, in the middle of the road, than driving a work truck.

4

24.     Additionally, during the Canadian wildfires, after Defendant's management took away Plaintiff's truck, she was dropped in the midst of the fires with two crew members and left there in the hot sun breathing smoke for 12 hours without proper PPE, water to drink, or bathroom breaks – putting her pregnancy at risk.

25.     Plaintiff objected to Defendants' management, including but not limited to Idalys and Foster, of the discriminatory and disparate treatment toward Plaintiff as a result of her pregnancy, but to no avail.

26.     Once Plaintiff was taken out of her work truck, she was also demoted back down to a Flagger from a Lead and given a .50 cent per hour reduction in pay, for no other reason than her pregnancy.

27.     Additionally, following news of her pregnancy, the employee crews started treating Plaintiff badly, and while supposedly concerned about safety issues with Plaintiff driving a work truck, which was ridiculous, they inundated her with extra, more laborious work – unloading trucks and laying all the signs and cones.

28.     Thereafter, just 2 months after first notifying management of her pregnancy, Plaintiff was informed by Erica (last name unknown, hereinafter "Erica") in payroll that she should file for unemployment as Defendants suddenly purportedly had barely had any work or hours for Plaintiff.

29.     Throughout the early part of her tenure with Defendants, until the announcement of her pregnancy, Plaintiff was working approximately 40 to 60 hours per week.

30.      However, shortly after notifying Defendants of her pregnancy, Plaintiff's hours were reduced from approximately 40 to 60 hours a week to only about approximately 16 hours a week, and she was required to file for unemployment in or about February of 2024 to financially support herself.

31.    Yet, other non-pregnant employees, with far less tenure and experience than Plaintiff had working for Defendants, were given plenty of hours.

32.    Despite that Plaintiff continued to inform Defendants that she was able to work and more than ready to do so, she was denied all but a few hours a week.

33.    Thereafter, Plaintiff's baby was born a little early, and she commenced FMLA/maternity leave on or about March 16, 2024, for approximately 12 weeks, until on or about June 16, 2024.

34.    Prior to commencing her FMLA leave for the birth of her child, Plaintiff was promised by Foster that she would get her work truck, lead position, and .50 cent per hour raise back following her maternity leave – due in large part to her repeated objections to/complaints of unfair treatment because of her pregnancy.

35.    However, when Plaintiff returned from her FMLA leave, on or about June 16, 2024, instead of placing Plaintiff in her same or similar position as required under the FMLA, or giving her back her work truck, .50 per hour, and Lead position, Plaintiff was informed that Defendants allegedly did not have any jobs for her.

36.    Instead, Plaintiff was informed that Defendants allegedly had only 3 jobs and 30 workers; yet other employees were advising Plaintiff that they were working up to 60 hours per week – despite having less experience and tenure than Plaintiff.

37.    As a result, Plaintiff requested some PTO leave as she had over 80 hours in the bank to use.

38.    Thereafter, in or about early- to mid-July of 2024, Plaintiff requested 24 hours of PTO leave to visit her boyfriend's dying grandmother with him.

39.    Plaintiff returned on or about July 17, 2024, but informed Justine (last name unknown, hereinafter "Justine"), in payroll, that Plaintiff had been bitten by a dog out of state on

6

or about July 16, 2024, and would be unable to work on July 18 and July 19 (for doctor's visits), and that she would let Justine know if she would need rounds of rabies injections.

40.    However, despite knowing that Plaintiff was unavailable to work those two days (July 18 and July 19), and that Defendants had only been giving Plaintiff a few hours every two weeks prior to, Plaintiff was suddenly scheduled by Justine to work both July 18 and July 19, for which she was then given no-call, no-show violations.

41.    Not only were Defendants not following their own policies (*i.e.*, employees are only provided with a no-call, no show if they fail to call within 3 hours of their scheduled shift), Plaintiff had provided Justine with notice over 24 hours prior, but it was clear retaliation for her pregnancy, taking pregnancy related leave (in violation of the FMLA and the PWFA), and her objections to unfair treatment as a result of the same.

42.    Defendants' management then failed to provide Plaintiff with any hours of work and did not respond to her for several days, despite her repeated calls in for work.

43.    It wasn't until on or about August 7, 2024, Plaintiff was then informed by the Defendants' Regional Manager that she had been terminated.

44.    However, when Plaintiff then filed for unemployment, Defendants then reported that she had been fired on or about July 9, 2024, which was clearly false and made no sense as Justine had tried to schedule Plaintiff on or about July 18 and 19, 2024, as aforementioned.

45.    Regardless, it is clear that Defendants terminated Plaintiff (1) because of her pregnancy; and (2) for requesting and/or utilizing pregnancy-related leave (in violation of the FMLA and PWFA), and for her objections to unfair treatment as a result of her pregnancy.

46.    Additionally, Defendants failed to properly accommodate Plaintiff under the FMLA and PWFA by (1) demoting Plaintiff; (2) failing to return her to her same or similar

7

position following her FMLA/maternity leave; and (3) terminating her for requesting and/or exercising her rights under the FMLA and PWFA.

47. Plaintiff believes and therefore avers that she was subjected to discrimination, disparate treatment, demotion, discipline, and retaliation as a result of her pregnancy and/or her request for/utilization of maternity leave for the same.

48. Plaintiff believes and therefore also avers that her pregnancy was a motivating and/or determinative factor in her termination by Defendants.

**-Overtime and Wage Violations-**

49. In addition to treating Plaintiff unfairly as a result of her pregnancy, her pregnancy-related leave, and her objections to unfair treatment as a result of the same, Defendants also failed to pay her for several hours worked in violation of federal and state wage laws, for which she complained that her paystubs were incorrect and requested payment of the same.

50. For example, from in or about March of 2023 until her termination, Plaintiff was not paid for all hours promised to her with regard to drive time, spare time, and all hours worked.

51. Plaintiff was initially paid at a rate of $13.00 per hour, until her promotion to Crew Lead in or about May of 2023, at which time she was supposed to received a .50 per hour increase.

52. Notably, however, Plaintiff did not receive the .50 cent per hour raise when she first became Crew Lead for about two months.

53. At the time of her termination, Plaintiff's rate of pay was approximately $14.95 per hour.

8

54. While employed with Defendants, Plaintiff was at all times relevant herein unequivocally a non-exempt employee who should have been paid overtime compensation for all hours worked over 40 hours per week at a rate of time and one half.

55. As discussed *supra*, in the months leading up to when she notified Defendants of her pregnancy and intent to take FMLA and PWFA-qualifying leave, Plaintiff was working from 40 to 60 hours per week.

56. While Defendants properly paid the majority of Plaintiff's hours over 40 each week at a rate of time and one half, upon Plaintiff's observations and belief, Defendants' management was altering the working end time of many employees (shaving occasional hours off of each day/job), including Plaintiff, which resulted in her not receiving compensation for *all* hours worked, as well as not receiving overtime compensation for those hours incurred over 40 hours each week.

57. Plaintiff estimates that she is owed approximately 40 hours of compensable drive time, spare time, overtime, and regular hours that she was promised and/or actually worked.

58. Plaintiff also had approximately 80 hours of PTO accrued during her employment with Defendants. Nonetheless, contrary to their written policy, Defendants did not allow Plaintiff to use any of these accrued PTO hours during her FMLA and/or maternity leave.

59. Additionally, Plaintiff requested and was approved 24 hours PTO prior to her termination; however, she was only paid for 8 hours.

60. As a result, Plaintiff was prevented from using 72 hours of PTO that she had available to her during her employment with Defendants, and Defendants to date have refused to compensate Plaintiff for the same.

61.     Plaintiff repeatedly claimed of these wage violations verbally and in writing to management and payroll leading up to her termination, but her concerns were largely dismissed, and she was never compensated properly for the same.

62.     Defendants' actions in failing to pay Plaintiff for all overtime and all hours she worked, despite being on notice of their obligation to do the same, was without question willful, intentional, and in blatant disregard for state and federal laws.

63.     Plaintiff is entitled to double damages for any unpaid overtime incurred from throughout her employment with Defendants, in addition to all legal fees.[2] *See* 29 U.S.C. § 216(b)(a prevailing plaintiff "shall" be entitled to attorney's fees).

64.     Upon information and belief, Defendants have and continue to implement a system that results in non-payment of proper overtime compensation and all hours worked to Plaintiff and other similarly situated employees.

65.     Plaintiff was then retaliatorily terminated on or about August 7, 2024, but allegedly effective on or about July 9, 2024 (set forth *supra*), in close proximity to Plaintiff's complaints of overtime, wage, and/or PTO violations.

---

[2] *See e.g. Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009) (Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory"); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014) (Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014) (Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008) (Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26 (1st Cir. 2007) (Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 U.S. App. LEXIS 15302 (4th Cir. 2000) (Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999) (Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Industrial Molding Corp*., 167 F.3d 921 (5th Cir. 1999) (Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

10

66.    Plaintiff believes and therefore avers that she was really terminated in part because of her complaints regarding Defendants' overtime and wage violations.

67.    Defendants' retaliatory termination of Plaintiff constitutes unlawful retaliation under the Fair Labor Standards Act ("FLSA").

**COUNT I**
**Violations of Title VII/PDA**
**([1] Pregnancy Discrimination; [2] Retaliation; [3] Hostile Work Environment)**
**-Against Both Defendants-**

68.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

69.    In or about September of 2023, Plaintiff informed Defendants' management that she was pregnant.

70.    Plaintiff is qualified under Title VII/PDA for protection because she was pregnant.

71.    Plaintiff was subjected to a hostile work environment through disparate treatment, demotion, reduction in pay, removal of her work vehicle, reduced hours, and overall demeaning treatment because of her pregnancy and/or complaints of pregnancy discrimination.

72.    Plaintiff was then abruptly informed that she was terminated on or about August 7, 2024 (but with an alleged effective date of July 9, 2024).

73.    Plaintiff believes and therefore avers that her pregnancy was a motiving and/or determinative factor in Defendant's decision to terminate her employment.

74.    These actions as aforesaid constitute violations of Title VII/the PDA.

11

**COUNT II**
**Violations of the PWFA**
**([1] Interference; [2] Retaliation; [3] Discrimination; [4] Hostile Work Environment)**
**-Against Both Defendants-**

75.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

76.    Plaintiff is qualified under the PWFA for protection because she was pregnant during her employment with Defendants and requested the reasonable accommodation of medical/maternity leave following the birth of her child (to recover from the same).

77.    Plaintiff was subjected to a hostile work environment through disparate treatment, demotion, reduction in pay, removal of her work vehicle, reduced hours, and overall demeaning treatment after inquiring about a pregnancy-related accommodation and informing Defendants that she intended to utilize a reasonable pregnancy-related accommodation.

78.    Plaintiff believes and therefore avers that her rights under the PWFA were interfered with, and she was retaliated against for requesting a reasonable pregnancy-related accommodation when she was subjected to a hostile work environment, demoted and stripped of hours, her work truck, and pay, and/or unlawfully terminated.

79.    Defendants' actions as aforesaid constitute violations of the PWFA.

**COUNT III**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Interference and Retaliation)**
**- Against Both Defendants –**

80.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

81.    Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

12

82.    Plaintiff requested leave from Defendants, her employer(s), with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

83.    Plaintiff had at least 1,250 hours of service with Defendants during her last full year of employment.

84.    Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

85.    Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

86.    Defendants committed interference and retaliation violations of the FMLA by *inter alia*: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights; (2) terminating Plaintiff and/or subjecting her to a hostile work environment to dissuade Plaintiff from utilizing FMLA leave; (3) considering Plaintiff's FMLA leave needs in making the decision to terminate her; (4) terminating Plaintiff to prevent her from taking FMLA-qualifying leave in the future; (5) taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA; and (6) failing to return her to her same or similar position following her return from FMLA leave.

87.    These actions as aforesaid constitute violations of the FMLA.

**COUNT IV**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Failure to Pay Overtime Wages & Retaliation)**
**-Against Both Defendants-**

88.    The foregoing paragraphs are incorporated herein as if set forth in full.

89.    At all times relevant herein, Defendants are, and continue to be, an "employer(s)" within the meaning of the FLSA.

13

90.     At all times relevant herein, Plaintiff was an "employee" within the meaning of the FLSA.

91.     The FLSA requires covered employers, such as Defendants, to minimally compensate its "non-exempt" employees, such as Plaintiff, at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works (*i.e.*, hours in excess of 40 hours in a workweek).

92.     At all times during her employment with Defendants, Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

93.     Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

94.     Defendants failed to pay Plaintiff 1.5 times Plaintiff's regular rate of pay for some of the hours that she worked over 40 each workweek.   In fact, upon occasion, Defendants failed to pay Plaintiff any wages for some of the hours she worked in excess of 40 each week (set forth *supra*).

95.     Plaintiff expressly complained to Defendants about non-payment of these hours.

96.     Defendants retaliated against Plaintiff by terminating her employment on or about August 7, 2024 (but with an alleged effective date of July 9, 2024).

97.     Any retaliation against Plaintiff for exercising her statutory rights to complain of unpaid overtime was *per se* unlawful.  *See Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011) (it is illegal under the FLSA to retaliate against an employee for verbal <u>or</u> written concerns of unpaid overtime compensation within a workplace).

14

98.     As a result of Defendants' failure to pay Plaintiff the overtime compensation due her, Defendants violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

99.     Plaintiff therefore seeks all remedies permitted under the FLSA for unpaid wages as well as penalties and interest.

**COUNT V**
**Violations of the Pennsylvania Minimum Wage Act ("PMWA")**
**(Failure to Pay Overtime Wages)**
**-Against Both Defendants-**

100.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

101.     At all times relevant herein, Defendants are, and continue to be, an "employer" within the meaning of the PMWA.

102.     At all times relevant herein, Plaintiff was employed by Defendants as an "employee" within the meaning of the PMWA.

103.     The PMWA requires covered employers, such as Defendants, to minimally compensate its "non-exempt" employees, such as Plaintiff, 1.5 times the employee's regular rate of pay for each hour that the employee works over 40 in a workweek.

104.     At all times during her employment with Defendants, Plaintiff was a "non-exempt" employee within the meaning of the PMWA.

105.     Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the PMWA.

106.     Defendants failed to pay Plaintiff 1.5 times Plaintiff's regular rate of pay for some of the hours that she worked over 40 each workweek.

107.     Defendants' failure to pay Plaintiff's overtime compensation as aforesaid constitutes violations of the PMWA.

15

**COUNT VI**
**Violation of the Pennsylvania Wage Payment Collection Law ("WPCL")**
**(43 P.S. §§ 260.3(a)-(b))**
**-Against Both Defendants-**

108.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

109.    Plaintiff had an agreement with Defendants whereby Defendants agreed to compensate Plaintiff for services she performed during her employment.

110.    Plaintiff performed the agreed-upon services for Defendants, and Defendants failed to properly compensate Plaintiff for the services rendered as specified by the Parties' employment agreement (included but not limited to paying Plaintiff for all hours worked)

111.    Defendants failed to compensate Plaintiff for all wages owed during her employment with Defendants (set forth *supra*).

112.    Additionally, Plaintiff had 80 hours of available and accrued PTO time and requested the ability to use the same during her employment with Defendants (first for her maternity leave and then for vacation).  However, Plaintiff was only ever paid for 8 hours of PTO leave that she took during her employment with Defendants.

113.    Accordingly, Plaintiff has suffered damages in the form of lost wages.

114.    These actions as aforesaid constitute violations of the Pennsylvania Wage Payment and Collection Law.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.    Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for

Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

C.     Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law; and

F.     Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.   Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF, & CERUTTI, P.C.**

Ari R. Karpf, Esquire
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com

Dated: July 29, 2025

17